RECEIVED

JAN 2 9 2019

CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

1

2  Shayne Boodoo
   8588 134th Street West
3  Apple Valley, MN 55124

4  Plaintiff, in *pro per*

5

6

7

8  **UNITED STATES DISTRICT COURT**
   **DISTRICT OF MINNESOTA**

9

10  **SHAYNE BOODOO,** an individual

11   as Plaintiff,

12  vs.

13  **NELNET SERVICING, LLC, a**
    **corporation; EQUIFAX, INC., a**
14  **corporation; EQUIFAX INFORMATION**
    **SERVICES, LLC, a corporation;**
15  **EXPERIAN INFORMATION**
    **SOLUTIONS, INC, a corporation;**
16  **TRANS UNION, LLC, a corporation;** and
    DOES 1-10, inclusive
17

18   Defendant(s).

19

20

21

22

23

24

25

26

27

28

**Case No.** 19 cv 217 PJS/DTS

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW the Plaintiff, *In Pro Per*, and brings this Verified Complaint (hereinafter "Complaint") against Defendants states as follows:

SCANNED

JAN 2 9 2019

U.S. DISTRICT COURT ST. PAUL

# I.   PRELIMINARY STATEMENT

1.      This action arises out of all Defendants' violations of the Fair Credit Reporting Act 15 U.S.C. §1681 (hereinafter "FCRA"), which prohibits furnishers/debt collectors from failing to investigate consumer disputes. Defendants are "furnisher of information" under the FCRA.

2.      This action arises out of Defendants EQUIFAX, INC., EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC, and TRANS UNION, LLC's violations of the Fair Credit Reporting Act 15 U.S.C. §1681, which prohibits consumer reporting agencies (hereinafter "CRAs") from failing to investigate/reinvestigate consumers' disputes, failing to provide consumers with their "Full Consumer File Disclosure", and failing to add additional statement to the consumer credit file.

3.      This action arises out of Defendant NELNET SERVICING, LLC's violations of the Fair Debt Collection Practices Act 15 U.S.C. §1692 (hereinafter "FDCPA"), which prohibits furnishers from engaging in willful and negligent, false, deceptive, misleading and unfair practices.

4.      15 U.S.C. §1681n and §1681o, create a private right of action for consumers to bring against violators of <u>any</u> provision of the FCRA with regard to their credit. In *DiMezza v. First USA Bank, Inc.*, 103 F.Supp.2d 1296, 1300 (D.N.M. 2000) the Court confirmed that "…the plain language of [15 U.S.C. §1681n and §1681o] provide a private right of action for a consumer against furnishers of information who have willfully or negligently fail to perform their duties upon notice of a dispute…there is a private right of action for consumers to enforce the investigation and reporting duties imposed on furnishers of information." *Id*. 1300.  All

Defendants have willfully and negligently failed to perform their duties by not properly validating the disputed debt shown on Plaintiff's credit report.

5.      Plaintiff contends that the Defendants have violated such laws by repeatedly harassing Plaintiff in attempts to collect alleged but non-existent debt.

## II.   JURISDICTION

6.      Jurisdiction of this Court arises under 15 U.S.C. §1681, seq, and 15 U.S.C. §1692, seq.; as well as 28 U.S.C. § 1331.

7.      Venue is proper pursuant to 28 U.S.C. §1391(b). Venue in this District is proper in that the Plaintiffs reside here, the Defendants transact business here, and the conduct complained of occurred here.

8.      This is an action for damages which exceed $25,000.00.

9.      All conditions precedent to the bringing of this action have been performed.

## III.   PARTIES

10.      Plaintiff Shayne Boodoo, (hereinafter "Plaintiff") is a natural person residing in Dakota County, Minnesota.

11.      Defendant, Nelnet Servicing, LLC (hereinafter "Nelnet"), is a Foreign Limited Liability Company, organized under the Laws of Nebraska, with a principal place of business 121 South 13th Street, Lincoln, NE 68508.  Nelnet's registered agent is CT Corporation System, with a registered office address of 1010 Dale St N, St Paul, MN  55117-5603 USA.

12.      Defendant Nelnet is engaged in the collection of debts from consumers using the mail. Nelnet regularly attempts to collect consumer debts alleged to be due to another. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13.     Defendant Nelnet was and is a "person" as defined under 15 U.S.C. §1681a(t) and a "user" of consumer information pursuant to U.S.C. §1681b(f) and is restricted by and subject to the remedies of the FCRA. Defendant Nelnet is also a furnisher of information who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher".

14.     Defendant Equifax, Inc., (hereinafter "Equifax"), along with its subsidiaries, affiliates and business partners operates as a Consumer Reporting Agency[1] as that term is defined (See 15 U.S.C. § 1681a(f) See *Hinkle v. Experian Information Solutions, Inc.*, 1:18-cv-007, USDC, W.D.N.C. ("The term "consumer reporting agency" means any person, who for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.") regulated by the Fair Credit Reporting Act, ("FCRA") 15 U.S.C. § 1681 et seq.  with Equifax Inc. corporate offices at 1550 Peachtree Street, NW, H46, Atlanta, GA 30309. EQUIFAX may be served through its registered agent, Prentice-Hall Corp. System, 2345 Rice Street, Suite 230, Roseville, MN, 55113, USA. EQUIFAX is a public corporation, trading in the New York Stock Exchange as "EFX". EQUIFAX is the parent corporation of EQUIFAX INFORMATION SERVICES, LLC.

15.     Equifax, Inc. is the parent of Equifax Information Services, LLC.

16.     Equifax, Inc. and its subsidiaries such as Equifax Information Services, LLC ("EIS") and Equifax Consumer Services, LLC (hereinafter "ECS") operate as alter egos of one

another and freely transfer communications from consumers, as well as consumer information and data based on consumer information and communications, between the entities for commercial purposes without restriction and to treat them as separate entities would promote fraud and sanction injustice.

17.    Equifax, Inc. and its subsidiaries, including EIS operate using the same "Equifax" logo with no differentiation between the entities when interacting with consumers via mail and otherwise.  By virtue of different subsidiaries and divisions operating without any impediments of corporate structure using the same logo as Equifax, Inc., an unsophisticated consumer would not know one Equifax from another.

18.    To remain separate and distinct for purposes of liability in this action, Defendants Equifax, Inc. and Equifax Information Services, LLC must operate as separate and legally as well as operationally distinct entities.  Here for matters alleged and relevant herein, EIS is merely an alter ego of Equifax, Inc.  For purposes of how consumer data is handled, warehoused, used and sold the corporate lines were disregarded in practice.  EIS, ECS and other subsidiaries of Equifax, Inc. are mere instrumentalities for the transaction of the corporate consumer credit business.  In other words, Equifax, Inc., EIS, ECS and other subsidiaries share full unity of interest such that the separate personalities of the corporation and subsidiaries no longer exist as they operate as one consumer reporting agency under the FCRA.

19.    Equifax, Inc. has used EIS and ECS and other subsidiaries as dependent and integrated divisions rather than separate legal entities.  The business operations are fully coordinated and shared resources are cross-applied without full and complete profit centers. Management decisions at EIS and ECS as well as other divisions are made by and through Equifax, Inc. and the entities hold themselves out as a single uniform business entity

exchanging and selling consumer information as well as data derived from consumer

information and communication it holds in its consumer files.  Its customer base is vast and

includes state and federal governments generating hundreds of millions if not billions of dollars

in revenue annually.

20.     Defendant EQUIFAX INFORMATION SERVICES, LLC (hereinafter "EIS") is

a foreign corporation/limited liability company believed to be authorized to do and is doing

business in this State. Defendant EIS is a "consumer reporting agency," as codified at 15 U.S.C.

§1681a(e). EIS has a Principal Executive Office Address at 1550 Peachtree Street, NW, H46,

Atlanta, GA 30309, and may be served through its registered agent, Prentice-Hall Corp.

System, 2345 Rice Street, Suite 230, Roseville, MN, 55113, USA.

21.     The FCRA, through a rule mandated at § 1681x expressly prohibits "a consumer

reporting agency from circumventing or evading treatment as a consumer reporting agency" by

means of corporate organization or restructuring.  EQUIFAX, Equifax Consumer Services,

LLC and EIS operate as one credit reporting agency.

22.     Defendant Experian Information Solutions, Inc. (hereinafter "Experian") along

with its subsidiaries, affiliates and business partners operates as a Consumer Reporting Agency

regulated by the Fair Credit Reporting Act, ("FCRA") 15 U.S.C. § 1681 et seq. with a principal

corporate executive office address of 475 Anton Boulevard, Costa Mesa, CA 92626 and may be

served through its registered agent, C T Corporation, 1010 Dale St. N., St. Paul, MN, 55117-

5603, USA.

23.     Experian, its subsidiaries and partners sell consumer information and data

derived from consumer information in its consumer file(s) in a number of products and services

to customers such as financial institutions and the debt collection industry.  As of November

13, 2018, Experian's website advertises and promotes their "…U.S. ConsumerView marketing database covers over 300 million individuals and 126 million households.  With the freshest data compiled from hundreds of public and proprietary sources, Experian has thousands of powerful data points to help marketers reach their targeting goals, including demographics, purchasing habits, lifestyles, interests and attitudes."

24.     Defendant Trans Union, LLC (hereinafter "TRANS", "Trans Union") along with its subsidiaries and affiliates operates as a Consumer Reporting Agency regulated by the Fair Credit Reporting Act, ("FCRA") 15 U.S.C. § 1681 et seq. with corporate offices at 555 W. Adams Street, Chicago, IL 60661, and may be served through its registered agent, Prentice-Hall Corp. System, 2345 Rice Street, Suite 230, Roseville, MN, 55113, USA.  Trans Union operates as a single FCRA governed consumer reporting agency.  Trans Union, LLC has structured itself in order to warehouse its sale of credit reporting consumer reports in one entity and its sale of criminal history, employment, landlord-tenant purposed, etc. consumer reports in other entities.  However, it freely transfers data between units and operates without any impediments of corporate structure.  In almost every material regard, the Trans Union units operate as if they are one and the same, a single consumer reporting agency.

25.     Defendants Does 1-10 are currently unknown to plaintiffs. Complaint will be amended when facts are discovered regarding unknown parties.

## IV.  FACTUAL ALLEGATIONS

26.     During the weeks prior to January 18, 2018, Plaintiff became aware and increasingly suspicious that Defendant Nelnet was reporting derogatory information about an alleged debt to credit reporting agencies, namely Defendants Equifax, Experian and Trans Union.

27.     On January 18, 2018, Plaintiff sent Defendant Nelnet a Notice and Demand which included a notice of dispute, a demand for validation of the alleged debt and a demand for removal of derogatory information regarding an alleged account ending in 0451. *(See "Exhibit A")*

28.     On or about February 23, 2018, Plaintiff ordered and received a copy of a credit report from Defendants Equifax, Experian and Trans Union (collectively "CRAs") and noticed none of the Defendants reported the alleged account or information displayed under a unique or different number indicated the alleged debt as disputed. *(See "Exhibit B")*

29.     On or about March 10, 2018, Plaintiff sent Defendant CRAs a writing titled Removal of Errant Accounts via certified mail which included correspondence and evidence Nelnet had not validated the proposed debt or account information of a proposed account ending in 0451 being reported to the CRAs and to correct their records. *(See "Exhibit C")*

30.     On March 19, 2018, Plaintiff ordered and received a copy of Plaintiff's credit report from Experian.  The information Experian provided failed to report the alleged debt had been disputed by Plaintiff. *(See "Exhibit D")*

31.     On or about July 2, 2018, Plaintiff sent another Notice of Dispute to Jeff Kruger, Chief Financial Officer of Defendant Nelnet and Jeffrey R. Noordhoek, Chief Executive Officer of Defendant Nelnet via registered mail regarding Nelnet's proposed account ending in 0451.  Plaintiff also sent copies of Plaintiff's Notice of Dispute to executives at Equifax, Experian and Trans Union via certified mail as indicated. *(See "Exhibit E")*

32.     Simultaneously, on or about July 2, 2018, Plaintiff sent executives of Equifax, Experian and Trans Union notices of the specific requirements of 15 U.S.C. § 609(c)(2)(e) via certified mail. *(See "Exhibit F")*

33.     On or about August 6, 2018, Plaintiff sent another Notice of Dispute to Jeff Kruger, Chief Financial Officer of Defendant Nelnet and Jeffrey R. Noordhoek, Chief Executive Officer of Defendant Nelnet via registered mail regarding Nelnet's proposed account ending in 0451.  Plaintiff also sent copies of Plaintiff's Notice of Dispute to executives at Equifax, Experian and Trans Union via certified mail as indicated. *(See "Exhibit G")*

34.     Simultaneously, on or about August 6, 2018, Plaintiff sent executives of Equifax, Experian and Trans Union notices of the specific requirements of 15 U.S.C. § 609(c)(2)(e) via certified mail.  *(See "Exhibit H")*

35.     On or about August 18, 2018, Plaintiff ordered and reviewed credit information provided by Defendants Experian, Equifax and Trans Union and discovered that only Experian was reporting Plaintiff disputed the Nelnet account.  *(See "Exhibit I")*

36.     On or about September 7, 2018, Plaintiff sent another Notice of Dispute to Jeff Kruger, Chief Financial Officer of Defendant Nelnet and Jeffrey R. Noordhoek, Chief Executive Officer of Defendant Nelnet via registered mail regarding Nelnet's proposed account ending in 0451.  Plaintiff also sent copies of Plaintiff's Notice of Dispute to executives at Equifax, Experian and Trans Union via certified mail as indicated. *(See "Exhibit J")*.

37.     On or about September 7, 2018, Plaintiff sent additional notices of Defendants' FCRA violations to numerous recipients including executives of Defendants Experian, Equifax and Trans Union via certified mail.  *(See "Exhibit K")*

38.     On or about September 29, 2018, Plaintiff ordered and reviewed credit information provided by Defendants Experian, Equifax and Trans Union and discovered the proposed Nelnet account was still not being reported as disputed or otherwise removed. *(See "Exhibit L")*

39.     On or about October 19, 2018, Plaintiff ordered and reviewed credit information provided by Defendants Experian, Equifax and Trans Union and discovered the proposed Nelnet account was still not being reported as disputed or otherwise removed. *(See "Exhibit M")*

40.     On or about November 30, 2018, Plaintiff made a written request sent by certified mail for a copy of his full consumer file disclosure request to Defendant Equifax.  *(See "Exhibit N")*

41.     On or about November 30, 2018, Plaintiff made a written request sent by certified mail for a copy of his full consumer file disclosure request to Defendant Experian. *(See "Exhibit O")*

42.     On or about November 30, 2018, Plaintiff made a written request sent by certified mail for a copy of his full consumer file disclosure request to Defendant Trans Union. *(See "Exhibit P")*

43.     On or about December 9, 2018, Plaintiff ordered and reviewed credit information provided by Defendants Experian, and Equifax and discovered the proposed Nelnet account was still not being reported as disputed or otherwise removed. *(See "Exhibit Q")*

44.     As of the date of Plaintiff's Complaint, Defendants Equifax, Experian and Trans Union have not responded to Plaintiff's full consumer disclosure file requests as described at ¶40, ¶41, and ¶42.

## V.  CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES
### ACT 15 U.S.C. §1692, *et seq,*
### BY DEFENDANT NELNET SERVICING, LLC

45.     All above paragraphs are incorporated herein.

46.     Plaintiff is a "consumer" as that term is defined in the FDCPA at 15 U.S.C. § 1692a(3).

47.     Defendant Nelnet is a "debt collector" as that term is defined in the FDCPA at 15 U.S.C. § 1692a(6).

48.     In connection with the collection of a debt, Defendant Nelnet, as a debt collector, directly or indirectly, used false, deceptive, or misleading representations or means, including failure to communicate to the CRA that the debt is disputed, in violation of Section 807(8) of the FDCPA, 15 U.S.C. §1692e(8). A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. The following conduct is a violation of this section:

> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the <u>failure to communicate that a disputed debt is disputed</u>. (Emphasis added)

49.     Pursuant to 15 U.S.C. §1692g(b), if the consumer notifies the debt collector in writing (as did Plaintiff) within thirty (30) days after receipt of an initial communication from debt collector that the debt is disputed, "the debt collector **shall cease** collection of the debt…until the debt collector obtains verification of the debt…and a copy of such verification…is mailed to the consumer." (Emphasis added) As stated by the Sixth Circuit in *Purnell v. Arrow Financial Services LLC*, 303 Fed.Appx. 297, 304 (2008), a debt collector who receives a demand for verification "has a choice: it either may choose not to verify the debt and abandon its collection efforts, or it may decide to verify the debt and resume collection activities once the requested validation has been provided. We find that the language of §1692g(b) dictates that each 'failure' to cease' collection activity without

having validated the debt – like each 'communication' of false credit information under 15 U.S.C. §1692e(8) – presents a discrete claim for violation of the FDCPA…"  Also, Defendant Nelnet failed to communicate that a disputed debt was disputed by not reporting it to the CRAs. The accuracy that is disputed consists of: demand that the claim of debt was valid, free from any claims and defects, whether there was a breach of agreement, whether there was a failure of consideration or material alterations, whether the alleged account was transferred, and that the original lender provided value by sourcing the funds from creditor's account.

50.   As a direct and proximate result of Defendant Nelnet's conduct, Plaintiff has and will continue to suffer damages as shown herein. Plaintiff seeks damages in the amount of $1,000 from Defendant Nelnet pursuant to 15 U.S.C. §1692k as a strict liability statute.

## COUNT II
## VIOLATION OF FAIR DEBT COLLECTION PRACTICES
## ACT (FDCPA), 15 U.S.C. §1692f
## AS TO DEFENDANT NELNET SERVICING, LLC

51.   All above paragraphs are incorporated as reference herein.

52.   Defendant Nelnet engaged in unfair practices and a wrongful campaign to collect alleged indebtedness from Plaintiff, which Defendant Nelnet knew or actively avoided knowing was not due from Plaintiff and ignored Plaintiff's disputes as to the collection account and Defendant Nelnet further reported false credit reporting and communications to the CRAs and attributed said information to Plaintiff in violation of the FDCPA, 15 U.S.C. §1692f. Defendant continues to report accounts that have not been proven to belong to Plaintiff.

53.     As a direct and proximate result of Defendant Nelnet's conduct, Plaintiff has and will continue to suffer damages as shown herein. Plaintiff seeks damages in the amount of $1,000 from Defendant Nelnet pursuant to 15 U.S.C. §1692k as a strict liability statute.

## COUNT III
### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681s-2(b) AS TO DEFENDANT NELNET SERVICING, LLC

54.     All above paragraphs are incorporated herein.

55.     The FCRA imposes certain duties upon furnishers of credit information. After a furnisher of credit information receives notice pursuant to section 1681i(a)(2), the furnisher is required to "conduct an investigation with respect to the disputed information," and "review all relevant information provided" to it by the CRA. 15 U.S.C. § 1681s–2(b)(1). Regardless of the results of its investigation, the furnisher must report back to any CRA that notified it of the dispute. *See Rambarran v. Bank of America, N.A.*, 609 F. Supp. 2d 1253, 1257 (S.D. Fla. 2009) (citing 15 U.S.C. § 1681s–2(b)(1)(C)). "If the investigation results in a finding that [the furnisher] provided incomplete or inaccurate information to the CRA, then it must report the results of its investigation to all other CRAs that received such incomplete or inaccurate information." *Id.* (citing 15 U.S.C. § 1681s–2(b)(1)(D)). Finally, if the investigation is either inconclusive or results in a finding that the furnisher provided incomplete or inaccurate information to the CRA, then the furnisher shall, "for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the investigation promptly modify that item of information; delete that item of information; or permanently block the reporting of that item of information." 15 U.S.C. § 1681s–2(b)(1)(E). The furnisher must complete its

investigations, reviews, and reports within the thirty-day period after the consumer notifies the CRA of the dispute. *See Rambarran*, 609 F. Supp. 2d at 1257 (citing 15 U.S.C. § 1681s–2(b)(2)).

56.     If a consumer notifies a furnisher that the consumer disputes the completeness or accuracy of any information reported by the furnisher, the furnisher may not subsequently report that information to the CRAs without providing notice of the dispute Section 623(a)(3). The statute is silent on the matter of the furnisher ceasing to report information while it is investigating the dispute. It is thus the opinion of the Commission staff that a furnisher temporarily ceases to report disputed information while it investigates the matter, and then either (1) corrects the information if its investigation results in agreement with the consumer or (2) reports the item as disputed by the consumer where that is the result of the investigation, would comply with Section 623(a).

57.     Under section 623(a)(3), after receiving a notice of dispute from a consumer, furnishers are required to meet a disclosure requirement by providing a notice of dispute to the CRAs within a timely manner. However, Defendant Nelnet failed to meet this condition of disclosure by not placing a "notice of dispute" on Plaintiff's credit file within the (30) day time period. *(See Exhibits "B", "D", "I", "L", "M" & "Q" Credit Reports)*

58.     Plaintiff sent written requests to Defendant Nelnet, under the FCRA, disputing the information and demanding that Defendant Nelnet investigate the inaccuracies and derogatory information that it reported. *(See Exhibits "A", "E", "G" & "J", Plaintiff's notice(s) of dispute)*.

Even though 15 U.S.C. §1681s-2a (8)(E) contains no private right of action, furnishers must comply with the statute, which states in relevant part:

**(E) Duty of person after receiving notice of dispute** After receiving a notice of dispute from a <u>consumer</u> pursuant to subparagraph (D), the person that provided the information in dispute to a <u>consumer</u> reporting agency shall—
**(i)** conduct an investigation with respect to the disputed information;
**(ii)** review all relevant information provided by the <u>consumer</u> with the notice;
**(iii)** complete such person's investigation of the dispute and report the results of the investigation to the <u>consumer</u> before the expiration of the period under <u>section 1681i(a)(1) of this title</u> within which a consumer reporting agency would be required to complete its action if the consumer had elected to dispute the information under that section; and
**(iv)** if the investigation finds that the information reported was inaccurate, promptly notify each consumer reporting agency to which the person furnished the inaccurate information of that determination and provide to the agency any correction to that information that is necessary to make the information provided by the person accurate.

and (D) states:

**(D)Submitting a notice of dispute** A consumer who seeks to dispute the accuracy of information shall provide a dispute notice directly to such person at the address specified by the person for such notices that—
(i) identifies the specific information that is being disputed;
(ii) explains the basis for the dispute; and
(iii) includes all supporting documentation required by the furnisher to substantiate the basis of the dispute.

59.     FCRA in 15 U.S.C. 1681a(r)(4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title.

(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 103(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

60.     The definition of "account" clearly does not include an account such as a credit card open end credit account but does include a demand deposit account, savings deposit or other asset account which is wholly different. The Defendant Nelnet here was attempting to collect on an alleged account with Nelnet where Plaintiff never had any such accounts.

61.    Consumers can maintain a private action against furnishers of information under Section 1681s-2(b). See *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918 (N.D. Ill. 2000); *DiMezza v. First USA Bank, Inc.*, 103 F. Supp. 2d 1296 (D.N.M. 2000); *Campbell v. Baldwin*, 90 F. Supp. 2d 754 (E.D.Tex.2000).

62.    Defendant Nelnet's responsibility to investigate was triggered by the CRA's reinvestigation request to Defendant Nelnet. Here Nelnet failed to conduct an investigation and report the results of that investigation to the CRAs.

63.    As a direct and proximate result of Defendant Nelnet's conduct, Plaintiff has and will continue to suffer damages as shown herein. Plaintiff seeks damages in the amount of $1,000 from Defendant Nelnet pursuant to 15 U.S.C. §1681o.

**CAUSE IV**
**VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681e(b)**
**AS TO DEFENDANTS EIS, EXPERIAN and TRANS**

64.    All above paragraphs are incorporated herein.

65.    Defendants EIS, EXPERIAN and TRANS failed to adopt and follow "reasonable procedures" to assure the maximum possible accuracy of Plaintiff's consumer credit and other personal information, as required by the FCRA, which they compiled, used and manipulated, in order to prepare consumer reports, credit scores, risk factor/denial codes and other economic and prediction data evaluations.

66.    Defendants EIS, EXPERIAN and TRANS have continually added, stored, maintained and disseminated personal and credit information, in consumer reports they each prepared and issued, about the Plaintiff which was inaccurate, false, erroneous and misleading despite notice from the Plaintiff that such information was inaccurate. Defendants EIS,

EXPERIAN and TRANS have failed and refused to report Plaintiff's disputes in its reports. *(See Exhibits "B", "D", "I", "L", "M" & "Q" Credit Reports)*

67.    Defendants EIS, EXPERIAN and TRANS have willfully, or alternatively, negligently, violated the FCRA, 15 U.S.C. §1681e(b), on multiple occasions, causing unnecessary harm, harassment and abuse upon Plaintiff and Plaintiff's credibility.

68.    The FCRA provides that whenever a CRA prepares a consumer credit report, "it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." FCRA, 15 U.S.C. §1681e(b). If a consumer's report contains an inaccuracy, the CRA who generated the inaccurate report may be held liable only if it failed to follow reasonable procedures. *Guimond, supra* at 1333. Generally, a jury should determine whether a CRA's procedures were reasonable and properly followed. *Id.* Also, see *Bradshaw v. BACHOME LOANS SERVICES, LP, et al.*, 3:10-438 (D.Or. 2011).

69.    To make out a prima facie violation under 1681e(b), a consumer must present evidence tending to show that a CRA prepared a report containing inaccurate information. *Guimond* (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)).

70.    These Defendants and Plaintiff are in opposite to the accuracy of Plaintiff's credit report. Plaintiff contends that the Nelnet accounts were always inaccurately reported because there was no valid debt owed by Plaintiff.  Plaintiff asserts that there is no account; if there is an account, it is invalid; and that if it is invalid, there is nothing owed to Nelnet. Plaintiff further asserts that Defendant Nelnet failed to investigate and report the dispute. Defendants EIS, EXPERIAN and TRANS respond that they accurately reported the Nelnet account. However, it cannot be concluded that Plaintiff's credit report was accurate as a matter

of law. This Court will find that the account status is not dispositive and that a material factual dispute exists regarding the accuracy of Plaintiff's report.

71.     Because the parties dispute whether Defendants EIS, EXPERIAN and TRANS implemented and followed reasonable procedures to assure maximum possible accuracy, this Court cannot dispose of this claim summarily.

72.     As a direct and proximate result of Defendants EIS, EXPERIAN and TRANS' conduct, Plaintiff has and will continue to suffer damages as shown herein. Plaintiff seeks damages in the amount of $1,000 from each of the Defendants EIS, EXPERIAN and TRANS pursuant to 15 U.S.C. §1681o.

## CAUSE V
## VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681i(a) AS TO DEFENDANTS EIS, EXPERIAN and TRANS

73.     All above paragraphs are incorporated herein.

74.     Plaintiff advised Defendants EIS, EXPERIAN and TRANS, through the furnishers and directly, of the false data and demanded that the data be removed from their consumer reports and data files.

75.     Defendants EIS, EXPERIAN and TRANS failed to properly investigate/reinvestigate Plaintiff's disputes and Defendants EIS, EXPERIAN and TRANS continued to prepare and publish false consumer reports.

76.     Defendants EIS, EXPERIAN and TRANS and furnishers exchanged information about Plaintiff's disputes through their investigation/reinvestigation and CDV/ACDV/UDF/AUDF processes.

77.     Defendants EIS, EXPERIAN and TRANS and the furnishers were very aware of Plaintiff's disputes, as well as their inadequate and illegal investigation/reinvestigation, and the

furnishers' responses to the numerous and varied contacts and their collective decision to leave disputes, false data as attributable to Plaintiff.

78.     Pursuant to 15 U.S.C. §1681i, a CRA must reasonably reinvestigate an item in a consumer's credit file once the consumer directly notifies the agency of a possible inaccuracy. 15 U.S.C. §1681i(a)(1)(A). This provision also requires a CRA to review and consider all relevant information submitted by the consumer, promptly provide the credit grantor of the disputed item with all relevant information regarding the dispute, and then promptly delete or modify the item based on the results of the reinvestigation. 15 U.S.C. §1681i(a)(2)(B); 15 U.S.C. §1681i(a)(4); 15 U.S.C. §1681i(a)(5)(A). To state a claim under 15 U.S.C. §1681i(a), Plaintiff must establish that: (1) his credit files contained inaccurate or incomplete information; (2) he notified the CRAs directly of the inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) CRAs failed to respond to the dispute; and (5) CRAs' failure to reinvestigate caused Plaintiff to suffer actual damages. *Thomas v. Trans Union, LLC*, 197 F.Supp.2d 1233, 1236 (D.Or. 2002) (citations omitted).

79.     Defendants EQUIFAX, EXPERIAN and TRANS failed to use reasonable procedures to investigate/reinvestigate Plaintiff's disputes and, likewise, took inadequate action to correct Plaintiff's consumer reports or delete the false data or otherwise conduct an appropriate, lawful reinvestigation.

80.     These CRAs (EQUIFAX, EXPERIAN and TRANS) utilized an automated dispute system to verify the accuracy of Plaintiff's account.

81.     Many Courts have concluded that where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without

additional investigation. *Saenz v. Trans Union, LLC*, 621 F.Supp.2d 1074, 1083-84 (D.Or. 2007) (discussing cases); see also *Cushman*, 115 F.3d at 225 ("The 'grave responsibility' imposed by §1681i(a) must consist of something more than merely parroting information received from other sources."); *Apodaca v. Discover Fin. Servs.*, 417 F.Supp.2d 1220, 1230-31 (D.N.M. 2006) (noting that CRAs may not rely on automated procedures that make only superficial inquires once the consumer has notified it that the information is disputed); *Lambert v. Beneficial Mortg. Corp.*, No. 3:05-cv-05468-RBL, 2007 WL 1309542, at *4-5 (W.D. Wash. May 4, 2007) (finding a question of fact as to whether the ACDV sent by the CRA contained sufficient information to comply with its reinvestigation duties). After this Court reviews the ACDV obtained through discovery, it will not conclude that CRAs' reinvestigations were reasonable as a matter of law.

82.     Plaintiff has met the prima facie showing of inaccuracy. These CRAs (EIS, EXPERIAN and TRANS) do not dispute that Plaintiff sent letters to them notifying them of relevant, allegedly inaccurate information.

83.     Defendants EIS, EXPERIAN and TRANS failed to take necessary and reasonable steps to prevent further inaccuracies from entering Plaintiff's credit file data and such false data continued to be posted as new consumer credit reports were prepared, issued and disseminated by Defendants EIS, EXPERIAN and TRANS and relayed for further use, reliance and publication by their subscribers.

84.     Defendants EIS, EXPERIAN and TRANS failed to adopt and follow reasonable procedures to assure the proper investigation/reinvestigation, accuracy, deletion and/or suppression of false data appearing on Plaintiff's consumer reports *(See Exhibits "B", "D", "I", "L", "M" & "Q" Credit Reports)* and as contained in their consumer reporting data-bank,

as required by the FCRA.

85.     Defendants EIS, EXPERIAN and TRANS have willfully, or alternatively, negligently, violated the FCRA, 15 U.S.C. §1681i(a), on more than one occasion as shown in their reports.

86.     As a direct and proximate result of Defendants' conduct, Plaintiff has and will continue to suffer damages as shown herein. Plaintiff seeks damages in the amount of $1,000 from each of the Defendants EIS, EXPERIAN and TRANS pursuant to 15 U.S.C. §1681o.

## CAUSE VI
### VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681i(c) AS TO DEFENDANTS EIS, EXPERIAN and TRANS

87.     All above paragraphs are incorporated as reference herein.

88.     Defendants EIS, EXPERIAN and TRANS failed to employ reasonable procedures to mark as disputed the various accounts contested by Plaintiff and which appeared in Plaintiff's consumer credit files and reports and to notify third parties, upon those inquiries, of the disputed nature of the account reporting.

89.     Defendants EIS, EXPERIAN and TRANS willfully, or alternatively, negligently, violated the FCRA, 15 U.S.C. §1681i(c).

90.     As a direct and proximate result of Defendants EIS, EXPERIAN and TRANS' conduct, Plaintiff has and will continue to suffer damages as shown herein. Plaintiff seeks damages in the amount of $1,000 from each of the Defendants EIS, EXPERIAN and TRANS pursuant to 15 U.S.C. §1681o.

## CAUSE VII
### VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681g(a)(1) AS TO DEFENDANTS EIS, EXPERIAN and TRANS

91.     All above paragraphs are incorporated as reference herein.

92.     Defendants EIS, EXPERIAN and TRANS failed to employ reasonable procedures to mark as disputed the various accounts contested by Plaintiff and which appeared in Plaintiff's consumer credit files and reports and to notify third parties, upon those inquiries, of the disputed nature of the account reporting.

93.     Defendants EIS, EXPERIAN and TRANS failed to comply with Plaintiff's requests for a full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(1).

94.     Defendants EIS, EXPERIAN and TRANS willfully, or alternatively, negligently, violated the FCRA, 15 U.S.C. §1681g(a)(1).

95.     As a direct and proximate result of Defendants EIS, EXPERIAN and TRANS' conduct, Plaintiff has and will continue to suffer damages as shown herein. Plaintiff seeks damages in the amount of $1,000 from each of the Defendants EIS, EXPERIAN and TRANS pursuant to 15 U.S.C. §1681o.

## VI.     RELIEF SOUGHT

VII.     This Court is authorized to immediately order all Defendants to permanently remove all reference to the alleged debt from Plaintiff's consumer credit file.

## VII. PRAYER FOR DAMAGES

**WHEREFORE,** plaintiff prays that this Court enter a judgment for Plaintiff, pursuant to the FDCPA and FCRA, against Defendants as follows.

(a)     Against Defendant Nelnet in the amount of $2,000;

(b)     Against each Defendant EIS, EXPERIAN and TRANS in the amount of $1,000;

(c)     Against each Defendant in the amount of $5,000;

(d)      Award Plaintiff the costs of bringing this action, as well as other and additional relief as the Court may determine to be just and proper. See *Guimond v. Trans Union Credit Information Company*, 45 F.3d 1329 (9th Cir. 1995) (Even without pecuniary or out-of-pocket loss, may recover actual damages for the mere injury to reputation or creditworthiness caused by the delinquencies appearing on credit report.)  and *Gertz v. Robert Welsh, Inc.*, 418 U.S. 323 (1974) *cf. Jorgeson v. TRW, Inc.*, C.A. No. 96-286 (D.Or. 1998)(emotional distress); *Valentine v. Equifax Information Servs, LLC, et al.*, U.S.Dist Ct. (Or) Case No. 05-cv-0801-JO (emotional distress); *Acton v. Bank One Corp.*, 293 F.Supp.2d 1092, 1101 (D.Ariz. 2003) citing *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020 1040 (9th Cir. 2003); *Johnson v. Hale*, 13 F.3d 1351, 1352-53 (9th Cir. 1994) (objective evidence not a requirement for emotional distress). *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 57 (2007) (punitive damages for willful failure to comply with any requirement of the FCRA. 15 U.S.C. §1681n(1)).

Where the issue of damages depends on whether a violation of the FCRA occurred, the question of damages is generally reserved for the jury. *Cairns v. GMAC Mortg. Corp.*, No. CIV 04-1840-PHX-SMM, 2007 WL 735564, *7 (D. Ariz. Mar, 5, 2007). A successful FCRA plaintiff is entitled to a damage award that varies depending on the willfulness of the breach. *See Rambarran v. Bank of America, N.A.*, 609 F. Supp. 2d at 1258.

Recovery for a negligent violation of FCRA is limited to the amount of actual damages and attorneys' fees and costs. *See* 15 U.S.C. § 1681o. "If the breach is willful, however, the plaintiff is entitled to recover either actual damages or statutory damages (from $100–$1,000), whichever is greater, in addition to attorneys' fees and costs." *Rambarran*, supra, at 1258. The Court may also impose punitive damages to punish a willful violation of FCRA. *See* 15 U.S.C. § 1681n.

"Construed literally, the text of the FCRA would seem to impose liability—regardless of the accuracy of the underlying information—if the furnisher did not conduct a proper investigation after receiving notice of a dispute." *Davidson v. Capital One*, No. 14–20478–CIV, 2014 WL 6682532, at *4 (S.D. Fla. Nov. 25, 2014).

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated: January 29, 2019

Respectfully submitted,

By: _Shayne Boodoo_

Shayne Boodoo
8588 134th Street West
Apple Valley, MN  55124
Plaintiff, *in pro per*

## VERIFICATION

STATE OF MINNESOTA

COUNTY OF DAKOTA

I have read the foregoing Complaint and know its contents.

I am the Plaintiff, party to this action, and am authorized to make this verification. The matters stated in the foregoing document are true and of my knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of Minnesota that the foregoing is true and correct.

Dated this _29_ of January, 2019,

_____

Shayne Boodoo, Plaintiff, In Pro Per

VERIFIED COMPLAINT
Boodoo v. Nelnet Services, LLC, *et al*